MacPHAIL, P. J.,
— This defendant was arrested, indicted and found guilty by a jury of operating a vehicle while under the influence of intoxicating liquor. A motion for new trial has been filed alleging six reasons why a new trial should be granted.
At about 2:30 a.m. on April 12, 1969, defendant was observed by two Pennsylvania State Policemen operating a small truck in a weaving manner as it approached them. The officers made a U-tum and followed defendant for a mile, during which distance the vehicle continued to weave back and forth across the highway. Defendant brought his vehicle to a stop without signal from the officers, but after suddenly slamming on his brakes and coming to an abrupt stop on the berm of the road. The police car pulled along side. One of the officers got out and walked over to defendant’s truck and opened the door on the driver’s side, whereupon defendant practically fell into the officer’s arms. Defendant had difficulty finding his operator’s license and the registration card for his vehicle. He had a strong odor of alcoholic beverages on his breath. He was asked to walk on the edge of the highway for a short distance and was observed by the officers to stagger as he did so. He was then taken to the Pennsylvania State Police Barracks where he was asked if he would consent to a breathalyzer test. He refused.
Defendant was then taken to a justice of the peace where a complaint was filed. At the office of the justice of the peace, the justice of the peace told defendant he would automatically lose his license for *632 one year if he didn’t submit to an alcohol test. Thereafter, defendant agreed to take a blood test which was administered by a physician who also gave defendant some “clinical” sobriety tests before extracting the blood. From these clinical tests the doctor determined that defendant’s ideation was sufficiently impaired by reason of the consumption of alcoholic beverages that he was unfit to operate a motor vehicle. The blood sample extracted by the physician was taken by the police some two days later to Physicians Clinical Laboratories in Chambersburg, where the sample was analyzed by a technician employed by Dr. W. E. B. Hall, a pathologist. The result of the blood analysis was .203.
Defendant alleges as error the admission of the result of the blood test into evidence because there was no compliance with the provisions of the Act of April 29, 1959, P. L. 58, sec. 624.1, as amended, 75 PS §624.1. Specifically, defendant says the test was not performed by qualified personnel as required by subsection (a) of section 624.1, that the test was not performed with equipment approved by the Secretary of Revenue as required by subsection (a) of section. 624.1 and that the device used to extract the blood and the device used to store and transport the blood was not approved by the secretary as required by subsection (a) of section 624.1. The Commonwealth admits that the specific approvals, etc., were lacking with respect to the equipment and personnel. However, the Commonwealth contends that this is irrelevant, since the test performed on this defendant was not the kind of test prescribed by section 624.1.
Subsection (d) of section 624.1 specifically permits the introduction of “other competent evidence” bearing upon the question of whether defendant is under the influence of intoxicating liquor. In Commonwealth *633 v. Klinedinst, 82 York 198 (1969), President Judge Atkins, of the York County Court of Common Pleas, held that the results of “blood tests” made in other acceptable ways, although not complying with the provisions of section 624.1, may be admitted into evidence. A similar holding by the York County court followed in Commonwealth v. Holland, 83 York 17 (1969). We are well satisfied that this is the law and we conclude that the evidence received in this case was properly admitted if there was consent to the test or if the test was made incident to an arrest executed on proper cause or if the test was made pursuant to a search warrant: Commonwealth v. Klinedinst, supra.
Obviously, there was no search warrant in the within case, and while defendant consented to the blood test, he says he did so because the justice of the peace told him he would lose his license if he didn’t. As in Commonwealth v. Klinedinst, supra, this factor may at least cloud the issue of the voluntariness of defendant’s consent. However, we need not particularly concern ourselves with that aspect of the case because the facts of the present case bring it squarely within the holding of Schmerber v. California, 384 U. S. 757, 16 L. Ed. 2d 908 (1966), wherein the United States Supreme Court held that no constitutional rights of a defendant are impaired where a blood extraction is made in a medically acceptable manner by a physician in a hospital environment, notwithstanding defendant’s objection thereto, provided there was ample justification for the arresting officer’s conclusion that defendant was under the influence of intoxicating beverages. In the instant case, we are well satisfied that there was ample justification for the officer’s conclusion that defendant was under the influence of intoxicating beverage and that the extraction was made in a medically acceptable manner. Accordingly, *634 we hold that the result of the blood test in this case was properly admitted.
In his brief, counsel for defendant notes that during the trial when a witness made a statement that defendant refused to take the breathalyzer test, a motion was made to withdraw a juror or, in the alternative, that the court instruct the jurors to disregard the testimony. We refused to declare a mistrial and stated that we would cover the matter in our charge to the jury. In fact, we made no mention of the allegedly prejudicial statement in our charge. Defendant now claims error. It is hornbook law that exceptions to omissions or inaccuracies in the court’s charge must be made before the jurors retire to deliberate: The Tropical Paint & Oil Co. v. Sharon Building Co., 313 Pa. 51 (1933). An opportunity was given by the court to counsel to present their exceptions or request for additional instructions. Counsel did make some objection to a portion of the charge unrelated to the matter now under discussion. When that matter was corrected by the court, counsel was again asked by the court if they were satisfied. Both replied in the affirmative. Thereafter, only a general exception was entered by counsel. The general rule is that failure to except, particularly to the trial judge’s omission to give further instructions on any branch of the case, precludes raising the question subsequently upon a general exception: The Tropical Paint & Oil Co. v. Sharon Building Co., supra. Under these circumstances, we hold that defendant has waived his right to raise this question at this time. Furthermore, we might add that defendant’s refusal to take the breathalyzer test is admissible (section 624.1(h)), and it is admissible whether or not a subsequent blood test is made outside of the provisions of section 624.1. The *635 police in this case wanted to have the test made by a breathalyzer and defendant refused. What he did thereafter would have no bearing upon the admissibility of his refusal, especially where he now contends he did not voluntarily consent to the later blood test in the hospital:
Defendant alleges that the result of the chemical test is inadmissible because defendant was not advised of his right to have the test performed by a physician of his own choosing as provided by subsection(g) of section 624.1. In answer to this, we again point out that the test made in this case was outside of the provisions of section 624.1. Furthermore, we do not interpret section 624.1(g) to require the police to advise defendant that he has the right to have the test performed by a physician of his own choice. No cases have been cited by defendant which so hold and we know of none.
Finally, defendant alleges that the results of the blood test should have been excluded because the Commonwealth failed to show that the blood sample remained uncontaminated in the hands of the police. On the contrary, we feel that the weight of the evidence in this case shows that there was no possibility of contamination. Further, the jurors were charged by the court that if they had any doubt about the accuracy of the test, either by reason of mislabeling or anything that was done or omitted to be done by those who handled or examined the blood, they would be obligated to disregard the results of the test.
ORDER OF COURT
And now, April 13, 1971, the motion for new trial is refused. Defendant is directed to appear for sentence at the call of the district attorney.